Filed 7/10/13  P. v. Wright CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062155 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD239262) |
| JERRY LOUIS WRIGHT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Lynne G. McGinnis, Lilia E. Garcia, Kristine A. Gutierrez, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Jerry Louis Wright of the lesser included offense of misdemeanor assault (Pen. Code,[1] §§ 240/241, subd. (a); count 1) and battery with serious bodily injury (§ 243, subd. (d); count 2). It found true allegations that he inflicted great bodily injury on count 2 (§ 1192.7, subd. (c)(8)). The jury acquitted Wright of the greater offense of felony assault in count 1 and making criminal threats in count 3. As to count 2, the jury found not true allegations that he personally used a metal rod as a deadly weapon. In a bifurcated proceeding, Wright admitted, among other prior convictions, he had suffered one serious felony and strike prior conviction (§§ 667, subd. (a)(1), 1170.12) that occurred in 1988. After granting Wright's motion to dismiss his strike prior conviction, the trial court sentenced Wright to 7 years in state prison, consisting of a two-year lower term on count 2, a concurrent six-month term on the count 1 misdemeanor, and five years for a serious felony prior. It ordered him to pay restitution fines and various fees.

Wright contends cumulative errors denied him his constitutional rights to due process and a fair trial. Specifically, he argues he was prejudiced by the trial court's error in admitting his previously excluded prior 1988 robbery conviction for the purpose of permitting the prosecution to impeach certain trial testimony and the prosecutor's subsequent misconduct in attempting to elicit irrelevant underlying facts concerning the robbery prior, and arguing to the jury that Wright responded in a deceptive manner when cross-examined about that prior conviction. We affirm the judgment.

---

[1]     Statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Sometime during the evening of February 13, 2012, Alvin Walker and his girlfriend Sherry Wright, who is appellant's sister,[2] returned home after going out and consuming beer and snacks. Because it had rained and they were wet and cold, Sherry went to turn on the heater. Wright, who had moved into Sherry's house with his girlfriend, came out of his room and, using expletives, angrily told her he was going to show her how to turn on the heater one last time. Walker admonished Wright not to talk to Sherry in that manner. Wright responded by hitting Walker very hard in the jaw. Walker fell back but then ran at Wright and punched him in the chest area, and the men began to tussle. Wright threatened to kill Walker or "kick [his] ass." According to Walker, Wright grabbed an aluminum broom handle and swung it like a baseball bat, hitting him in the forehead. Walker fled to the bathroom, bleeding profusely. He was later treated in the emergency room for a bloody and broken nose, a moderately deep cut on the brow, and swelling and tenderness on his face. Walker received a Vicodin prescription for his broken nose.

Police responding to Sherry's home later found the metal poles, but saw no indication they had been used in a fight. Wright was calm and did not have any visible injuries, and Sherry was initially elusive, claiming first that she was alone at the house, then acknowledging Wright was there.

---

[2]     We refer to Sherry Wright by her first name for clarity, not out of disrespect.

*Defense Evidence*

Testifying in his defense, Wright claimed Walker had been choking Sherry that night, and that Walker grabbed him after he protectively hugged Sherry. He stated he had reported Walker to police for prior domestic violence incidents against Sherry. Wright denied hitting or throwing any punches at Walker, and he denied picking up any stick or pole; according to Wright, Walker left and Wright locked the door behind him.

*Rebuttal Evidence*

A San Diego Police Department detective testified he spoke with Wright shortly after the incident and Wright never said anything about domestic violence or Walker choking Sherry. According to the detective, Wright told him that after Walker poked him in the chest, he knocked Walker's hand away and the two men wrestled. Another detective testified that Sherry reported to him that Wright and Walker argued and started to fight, and she saw Wright swing an object at Walker. Sherry did not tell him that Walker had choked or abused her, but she related that Wright had knocked her to the ground trying to go after Walker.

## DISCUSSION

Wright contends he was denied a fair trial by related and cumulative errors, namely, the trial court's admission of a previously excluded 24-year-old prior robbery conviction, leading the prosecutor to highlight to the jury the violent nature of that conviction and Wright's reluctance to admit it. We consider each assertion of error separately so as to assess their cumulative impact.

4

I. *Admission of 1988 Robbery Conviction*

A. *Background*

Before trial, the prosecutor sought to admit Wright's 1988 robbery conviction—in which Wright assertedly used a firearm to steal from multiple office employees—for impeachment and his character for violence. The trial court ruled the conviction was too remote, but explained it would reconsider its ruling if character evidence was offered that Wright was a peaceful, nonviolent person. The trial court also agreed the conviction would be admissible under Evidence Code section 1103[3] if Wright presented evidence of Walker's propensity for violence.

Wright subsequently testified about Walker's actions on the evening in question, claiming Walker had choked Sherry and grabbed him, as well as Wright's assertion he had twice before called police on Walker based on incidents of domestic violence between Walker and Sherry. When defense counsel asked if he was trying to defend his sister on the night in question, Wright responded that he thought he was "defending his attacker"; that he and Sherry were victims "because [Walker] was abusing her verbally, and when he put his hands on me, I thought . . . he was going to attack me. . . . So no, I didn't hit him or anything. . . . I don't fight. Excuse me. I don't."

---

3    Evidence Code section 1103, subdivision (b) provides in part: "In a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of . . . evidence of specific instances of conduct) is not made inadmissible by [Evidence Code] Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant . . . ."

During a sidebar taken after that testimony, the court ruled Wright had opened the door to impeachment with his prior robbery conviction. At the close of Wright's cross-examination, the prosecutor referred back to Wright's testimony that he was not a violent person, and asked him to admit that he suffered a prior robbery conviction involving violence and a gun. Wright admitted the 1988 robbery was a violent act, but denied it involved a gun. The court sustained defense counsel's belated objection as to the scope of the questioning.

B. *Admission of Wright's Robbery Prior Conviction was Not a Manifest Abuse of Discretion*

Article 1, section 28, subdivision (f)(4) of the California Constitution provides in relevant part: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding." "A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.)[4] "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for

---

[4] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

6

the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark*, at p. 931.) Because the trial court's discretion to admit or exclude impeachment evidence is broad, a reviewing court ordinarily upholds the trial court's exercise of discretion. (*Id.* at p. 932; *People v. Hinton* (2006) 37 Cal.4th 839, 887.) Robbery is a crime of moral turpitude (*People v. Collins* (1986) 42 Cal.3d 378, 395; *People v. Gray* (2007) 158 Cal.App.4th 635, 641) and a crime of theft that reflects on a witness's honesty. (*People v. Castro* (1985) 38 Cal.3d 301, 315, fn. 10.)

As stated, the trial court was required to exercise its discretion in deciding whether the 1988 conviction was too remote or prejudicial in view of Wright's relatively minor subsequent criminal history.[5] Concededly the court's discussion on that matter was limited to its commentary before trial. Nevertheless, the court did consider the nature of Wright's offense and its remoteness, and held it more probative than prejudicial in the event Wright presented evidence of his nonviolent character. "Although the record must 'affirmatively show that the trial court weighed prejudice against probative value' [citations], the necessary showing can be inferred from the record despite the absence of an express statement by the trial court." (*People v. Prince* (2007) 40 Cal.4th 1179, 1237.) The court's statements reflect it understood and exercised its obligation to balance

---

[5] Wright was later convicted in 1992 of felonies for possession of cocaine base and a controlled substance. He suffered misdemeanor convictions in August 2006 for being under the influence of a controlled substance and having an open alcoholic beverage in his vehicle and in October 2007 for driving without a valid license and failing to stop at a stop sign.

probative value against prejudice and the other relevant factors. And, after Wright testified he was not the sort of person who fights, exclusion of his robbery prior conviction would have given him a " ' " 'false aura of veracity.' " ' " (*People v. Clark*, *supra*, 52 Cal.4th at p. 932.) Admission of the evidence did not consume an undue amount of time; the questioning spans less than a page of transcript. We cannot say the trial court's decision to admit the evidence for impeachment was a plain and manifest abuse of discretion, exceeding all bounds of reason. (*People v. Watson* (2008) 43 Cal.4th 652, 684; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385 ["It is well established that a trial court is vested with wide discretion in determining relevance and weighing the prejudicial effect of evidence against its probative value," and "[e]videntiary rulings will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice"]; *People v. Stewart* (1985) 171 Cal.App.3d 59, 65.)

Even assuming the trial court abused its broad discretion in admitting Wright's 1988 conviction, which opened the door to the prosecution asking whether it involved violence and a gun, we cannot say admission of the prior conviction resulted in potentially game-changing prejudice. The evidence of Wright's guilt of misdemeanor assault and battery was amply supported by both Walker's and Sherry's testimony, and corroborated by the testimony of physicians as to Walker's injuries that night. Moreover, it is evident Walker's credibility was not completely destroyed, inasmuch as the jury necessarily believed his testimony that he did not attack Wright with the aluminum pole.

8

For this reason, there is no merit in Walker's claim that he was prejudiced by admission of the evidence.

## II. *Claim of Prosecutorial Misconduct*

Conceding his counsel did not object on misconduct grounds, Wright contends the prosecutor "step[ped] over the line" in his cross-examination about the facts underlying his 1988 prior conviction, as well as in suggesting Wright "was 'deceptive' about his record, while the victim was forthright." During closing argument, the prosecutor again referred to Wright's prior convictions and inconsistent statements, stating:

"[Prosecutor:] How reasonable is [Wright's] testimony? When you consider that testimony against all other testimony, how reasonable is it? And not just other testimony, but other evidence. [¶] And whether or not the person has a felony conviction. [¶] Alvin Walker's got four of them. It's true. But as I started out the trial and as I started out this closing, anyone can be a victim. And we don't get to pick the victims.

"Now he told you about those felonies. He told you. [¶] The defendant, however, was deceptive even in that, even in that. It had to get teased out of him when he says that he's not a violent person, and then he gets asked on cross-examination about his felony background, about that robbery conviction.

"Now, yes, it was in 1988. That's a long time ago. But just fess up to it."

Wright characterizes this as the "quintessence" of prosecutorial misconduct; that the prosecutor attempted to persuade the jury by reprehensible means knowing that Wright did not admit to his prior conviction because it was not yet in evidence. He maintains the prosecutor's errors swayed the jury to believe Walker and not him, and that

9

the jury may have wholly instead of partially acquitted him but for the prosecutor's improper examination and argument.

"The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 841; see also *People v. Stanley* (2006) 39 Cal.4th 913, 951.)

Setting aside counsel's forfeiture of the appellate contention for failing to timely object on misconduct grounds (*People v. Parson* (2008) 44 Cal.4th 332, 359), we perceive no misconduct under these standards. It is not misconduct to comment on evidence properly admitted by the trial court, and after the court's ruling, defense counsel did not request that it caution the prosecutor to "sanitize" the evidence by precluding mention of the nature of the particular offense. (See, e.g., *People v. Valentine* (1986) 42 Cal.3d 170, 173 [holding when defendant stipulates to felony conviction, evidence of the nature of the prior conviction should be withheld from the jury]; *People v. Massey* (1987) 192 Cal.App.3d 819, 825.) Thus, the prosecutor's comments as to the nature of Wright's robbery were not in derogation of any order sanitizing the prior. A prosecutor is free to give an opinion on the state of the evidence and has wide latitude to comment on its

10

quality and the credibility of witnesses as long as it is a fair comment on the evidence and reasonable inferences or deductions therefrom. (*People v. Bonilla* (2007) 41 Cal.4th 313, 336-337.)

Further, reversal for prosecutorial misconduct is called for only when, after reviewing the totality of the evidence, we can determine it is reasonably probable that a result more favorable to the defendant would have occurred absent the misconduct. (*People v. Tully* (2012) 54 Cal.4th 952, 1011; *People v. Watson* (1956) 46 Cal.2d 818, 836.) We cannot say counsel's brief comment swayed the jury in view of Walker's testimony, and it plainly found Walker the more credible witness despite his criminal history. Nor can we say the prosecutor's isolated comment during closing argument rendered the trial fundamentally unfair. Thus, the *Chapman v. California* (1967) 386 U.S. 18 standard of harmless error does not apply.

Accordingly, we reject Wright's contention that the cumulative effect of the purported errors undermined the fundamental fairness of the trial and require reversal. As we have " 'either rejected on the merits defendant's claims of error or have found any assumed errors to be nonprejudicial,' " we reach the same conclusion with respect to the cumulative effect of any purported errors. (*People v. Cole* (2004) 33 Cal.4th 1158, 1235-1236; *People v. Butler* (2009) 46 Cal.4th 847, 885.)

## DISPOSITION

The judgment is affirmed.


                                                          O'ROURKE, J.

WE CONCUR:


McDONALD, Acting P. J.


McINTYRE, J.